## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES TALBERT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| LOUIS GIORLA, et al., | : | |
| | : | NO. 15-3229 |
| Defendants. | : | |

### MEMORANDUM

STENGEL, J.                                              April 15, 2016

     *Pro se* plaintiff, Charles Talbert, brings a § 1983, § 1985 and § 1986 claim against defendant City of Philadelphia, Louis Giorla, Clyde Gainey, Michele Farrell, Karen Bryan, Gerald May, U.S. Facilities, Marcus Carol, Mental Health Management, Ms. Jones, O. Todd, Ms. Dunkin and Ms. Hill.[1]  Mr. Talbert seeks compensatory damages, punitive damages and declaratory relief.  Defendant Karen Bryant, City of Philadelphia, Michele Farrell, Clyde Gainey, Louis Giorla and Gerald May have collectively filed a motion to dismiss Mr. Talbert's amended complaint for failure to state a claim.  Defendant Jones and Mental Health Management have also filed a motion to dismiss Mr. Talbert's amended complaint for failure to state a claim.  Mr. Talbert has responded to both motions.  For the reasons discussed below, I am granting both motions to dismiss.

---

[1] U.S. Facilities, Marcus Carol, O. Todd, Ms. Dunkin and Ms. Hill have been terminated from this case for failure to properly serve them in accordance with Rule 4 of the Federal Rules of Civil Procedure.

I.      BACKGROUND

According to Mr. Talbert's amended complaint, Mr. Talbert is an incarcerated individual at Philadelphia Industrial Correctional Center ("PICC").  Pl.'s Am. Compl. ¶ 1.  Mr. Talbert is housed in his own cell in Unit-D because of medical conditions including an ileostomy and a lower back issue.  Id. at ¶ 14.  On July 2, 2014, correctional officer, O. Todd, moved Mr. Talbert from Unit-D to Unit-G, but because of his medical conditions the plaintiff was moved back to Unit-D on the same night.  Id. at ¶¶ 15-16. When O. Todd brought Mr. Talbert back to Unit-D, Mr. Talbert was not put back in a single cell, but was brought to a cell already occupied by another inmate.  Id. at ¶ 17. The other inmate was in the lower bunk and Mr. Talbert informed O. Todd that because of his medical conditions, Mr. Talbert needed to sleep on the lower bunk.  Id. at ¶ 18. Despite informing O. Todd of his medical conditions, O. Todd ordered Mr. Talbert to stay in the new cell and to sleep on the top bunk.  Id. at ¶ 18.  In climbing to the top bunk, Mr. Talbert suffered further back pain and in the morning, Mr. Talbert was climbing down from the top bunk when he fell.  Id. at ¶¶ 19-20.  The fall caused Mr. Talbert to hit his head resulting in a loss of consciousness.  Id.  Medical personnel called an ambulance which took Mr. Talbert to the hospital where Mr. Talbert was treated for a closed head injury, two herniated discs in his lower back and other injuries.  Id. at ¶¶ 21-23.

In the same amended complaint, Mr. Talbert alleges that on February 9, 2015, he was incarcerated at Curran-Fromhold Correctional Facility ("CFCF") in the unit designed to hold serious criminal offenders.  Id. at ¶ 31. During the night of February 9th, there

was a malfunction in the operation of the electrical cell doors and the cell doors opened. Id. at ¶ 34.  Mr. Talbert got up from his bed and when he went to the threshold of his door, another inmate tried to assault Mr. Talbert.  Id. at ¶ 36.  Mr. Talbert attempted to defend himself despite having several serious medical conditions.  Id. at ¶ 37.  After a time, officers arrived and broke up the fight between Mr. Talbert and the other inmate. Id.  Within 72 hours of the fight, Mr. Talbert was seen by the medical staff for complaints that his lower back was hurting him.  Id. at ¶ 38.  Additionally, Mr. Talbert complained to Mental Health Management that he was suffering paranoia and anxiety after the events of February 9th.  Id. at ¶ 39.

The next set of allegations that Mr. Talbert sets forth is about his legal mail.  On February 19, 2015, Mr. Talbert was moved from CFC to PICC.  Id. at ¶ 45.  Between February 19, 2015 and March 5, 2015, Mr. Talbert sent out from PICC several legal and non-legal documents through the mail which never reached their assigned destinations. Id. at ¶ 46.  Mr. Talbert filed several grievances stating that the PICC staff obstructed and delayed his mail.  Id. at ¶ 47.  On March 9, 2015 and March 12, 2015, Defendant Gerald May and Karen Bryant were on tour of Mr. Talbert's unit when Mr. Talbert approached the defendants to inform them about the issues Mr. Talbert was having with the mail.  Id. at ¶ 49.  Both May and Bryant refused to investigate these issues.  Id.  Given the defendants' refusal to investigate, on March 17, 2015, Mr. Talbert called Giorla and Gainey's phones to inform them about the mail issue.  Id. at ¶ 50.  Giorla and Gainey told Bryant about Mr. Talbert's call and Mr. Talbert alleges that Bryant ordered Mr. Talbert to

be put in disciplinary detention for "unauthorized use of [the] phone."  Id. at ¶ 51.  As a particular instance of his mail issues, Mr. Talbert cites to March 7, 2015, when a correctional sergeant, Ms. Hill, refused to give Mr. Talbert his legal correspondence.  Id. at ¶ 52.  When Mr. Talbert threatened to file "paperwork" against Ms. Hill, Ms. Hill "retaliated by placing false misconduct charges against plaintiff and having him placed in disciplinary detention."  Id. at ¶ 53.  Mr. Talbert alleges that he still continues to be deprived of his legal mail.  Id. at ¶ 58.

Finally, Mr. Talbert takes issue with his housing at CFCF and PICC.  Mr. Talbert has been housed in the disciplinary detention segregated housing units of CFCF and PICC for the last two years.  Id. at ¶ 61.  On this same unit, many mentally ill inmates are also detained.  Id. at ¶ 62.  Mr. Talbert states that the mentally ill inmates would "bang and yell all night, including flooding feces and urine out of their cells making plaintiffs [sic] cell contaminated and making plaintiff mentally angry and causing excessive mental distress."  Id. at ¶ 63.  According to Mr. Talbert, the noise and contamination caused him headaches, lack of sleep and lack of concentration.  Id. at ¶ 64.  Mr. Talbert believes that MHM and Ms. Jones are obligated to send mentally ill inmates who get into trouble to the psych ward rather than the unit on which Mr. Talbert is housed.  Id. at ¶ 66.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Following

the Supreme Court decisions in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009), pleading standards in federal

actions have shifted from simple notice pleading to a more heightened form of pleading,

requiring a plaintiff to allege facts sufficient to show that the plaintiff has a "plausible

claim for relief."  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).

While Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.

8(a)(2), in order to "give the defendant fair notice of what the . . .claim is and the grounds

upon which it rests," <u>Twombly</u>, 550 U.S. at 545, the plaintiff must provide "more than

labels and conclusions."  <u>Byrne v. Cleveland Clinic</u>, 684 F. Supp. 2d 641, 649 (E.D. Pa.

2010)(citing <u>Twombly</u>, 550 U.S. 544).  A facially plausible claim may not be supported

by conclusory allegations, but must allow the court "to draw the reasonable inference that

the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  However, a

*pro se* complaint must be liberally construed and held to a less stringent standard than

formal pleadings.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). A *pro se* action "can only

be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Jubilee</u>

<u>v. Horn</u>, 959 F. Supp. 276, 279 (E.D. Pa. 1997)(quoting <u>Estelle</u>, 429 U.S at 106).

## III.    DISCUSSION

Mr. Talbert's amended complaint is procedurally deficient.  Rule 20 of the Federal

Rules of Civil Procedure provides that defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A)-(B).  In his amended complaint, Mr. Talbert has asserted various causes of action occurring at two different prisons, CFC and PICC, over the course of approximately a year and a half.  Furthermore, there appears to be four different sets of factual allegations resulting in four different injuries contained within Mr. Talbert's complaint including:  (1) his fall from the top bunk; (2) the assault from another inmate which he suffered after the prison cell doors malfunctioned; (3) the interference with his legal mail; and (4) the housing of mentally ill inmates on his same unit.  None of these factual allegations arise from the "same transaction, occurrence, or series of transactions or occurrences."  Id. at 20(a)(2)(A).  Moreover, none of Mr. Talbert's claims involve a question of law or fact common to all defendants.  For the procedural deficiencies alone, I am dismissing Mr. Talbert's amended complaint.

### A.    Section 1983 Claims

The procedural deficiencies notwithstanding, the substantive basis of Mr. Talbert's complaint is not sufficient to state a claim for relief.  A viable § 1983 claim must plead two elements:  "(1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States."

Caldwell v. Luzerne Cnty. Corr. Facility Mgmt. Employees, 732 F.Supp.2d 458, 468 (M.D. Pa. 2010).  Additionally, a successful claim under § 1983 requires that the plaintiff demonstrate that there was a close causal connection between the defendant's conduct and the plaintiff's injury.  Id.  (citing Martinez v. Cal., 444 U.S. 277, 285 (1980).  In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

A plaintiff may not hold a municipality liable on a *respondeat superior* theory under § 1983.  Joseph v. Safehaven CEC, No. 14-3940, 2016 WL 693293, *5 (E.D. Pa. Feb. 22, 2016)("[A] city, municipality or private entity that is a state actor may not be held vicariously liable under  § 1983 for the actions of its agents because there is no *respondeat superior* theory of municipal liability")(citations omitted).  Rather, Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1989), establishes that municipal liability arises under § 1983 where the municipality implements or enforces "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" an authorized decisionmaker of that municipality.  Monell, 436 U.S. at 690.  A plaintiff asserting that a municipality violated their constitutional rights under Monell may proceed along a "two-path track . . . depending on whether the allegation is based on municipal policy or custom."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  A "policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation,

policy or edict." <u>Cummings v. City of Chester, Arthur Grenier</u>, No. 15-4504, 2016 WL 304790, *3 (E.D. Pa. Jan. 26, 2016)(citing <u>Mulholland v. Cnty. of Berks</u>, 706 F.3d 227, 237 (3d Cir. 2013)).  Whereas, a municipal custom "lacks the formal approval of a municipal policy," but consists of "such practices of state officials. . . .[as are] so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Glass v. City of Phila.</u>, 455 F.Supp.2d 302, 341 (E.D. Pa. 2006)(citing <u>Monell</u>, 436 U.S. at 691).  Under either track to municipal liability, by custom or policy, the plaintiff has the burden of showing that "an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990)(citations omitted). Ultimately, a plaintiff seeking to plead a <u>Monell</u> claim must:  "(1) identify a policy or custom that deprived him of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury." <u>Blasi v. Borough of Pen Argyl</u>, No. 14-1354, 2015 WL 4486717, *5 (E.D. Pa. July 23, 2015)(citing <u>Bd. of the Cnty. Com'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997)).

### 1.   The Top Bunk Claim

Mr. Talbert's first claim involves a closed head injury, two herniated discs and other injuries he suffered after falling from the top bunk.  Mr. Talbert demands judgment against the City of Philadelphia, Louis Giorla, Karen Bryant and O.Todd for his injuries

because they "had actual and/or constructive knowledge of plaintiffs [sic] medical conditions and intentionally, maliciously and negligently failed to apply safety precautions, policies, etc. . . . ." [2]  Pl.'s Am. Compl. ¶ 28.  For several reasons, Mr. Talbert cannot sustain a § 1983 action based upon allegations that when he was moved from one unit to another, Officer Todd placed him on a top bunk thereby causing Mr. Talbert to fall and injure himself. [3]

    First, Mr. Talbert's municipal liability claim lacks an essential element.  Mr. Talbert failed to identify a specific policy or custom which caused his injury.  Mr. Talbert makes a vague allegation that safety precautions and policies existed, which when followed, would provide Mr. Talbert access to the proper medical housing.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995)(concluding that vague assertions of policy or custom are not sufficient to impose liability).  Conclusory allegations that his injury was caused by a particular policy or custom without identifying that particular policy or custom are not sufficient to state a plausible claim for relief.

    Additionally, Mr. Talbert has not provided sufficient factual allegations demonstrating that the City of Philadelphia through its *deliberate* conduct was the moving force behind his injury nor does he allege any facts establishing that Giorla or Bryant had any personal involvement in the conduct which caused his injury.  "A[n individual government] defendant in a civil rights action must have personal involvement

---

[2] O. Todd has been dismissed from this case for failure to properly effectuate service upon him.
[3] Although Mr. Talbert does not identify a specific constitutional right underlying his § 1983 claim, given his claim that he was denied access to medical care, I will construe his claim as falling within the scope of the Eighth Amendment.

in the alleged wrongdoing; liability cannot be predicated solely on the operation of

*respondeat superior*.  Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347,

353 (3d Cir. 2005)(citing Rode, 845 F.2d at 1207).  Mr. Talbert alleges that Giorla and

Bryant had "actual and/or constructive knowledge of plaintiffs medical conditions and . .

.conspired to deprive plaintiff equal access to a medical housing unit . . ." but provides no

other factual allegations evidencing Giorla and Bryant's knowledge of his medical

condition or intention to conspire against Mr. Talbert.  Pl.'s Am. Compl. ¶ 28.  Rule

8(a)(2) requires a pleading to offer more than "a formulaic recitation of the elements of a

cause of action." Iqbal, 556 U.S. at 678.  Essentially, without factual allegations

evidencing deliberate conduct by the City of Philadelphia or personal involvement by

Giorla and Bryant, Mr. Talbert's complaint seeks to hold the City of Philadelphia and its

officials liable for the actions of O. Todd.  This *respondeat superior* theory of liability is

not viable under § 1983.

### 2.    The Malfunctioning Doors and the Assaulting Cellmate

Mr. Talbert's complaint also alleges that the City of Philadelphia, Giorla, Gainey

and Farrell are liable under § 1983 for injuries that he suffered when the doors of the

prisoners' cells malfunctioned allowing a fellow prisoner to assault Mr. Talbert.

Although Mr. Talbert's complaint does not specifically allege that these allegations fall

within the scope of the Eighth Amendment, I will construe his allegations regarding the

malfunctioning doors as asserting a "failure to protect" claim under the Eighth

Amendment. The Eighth Amendment "govern[s] the treatment received by prisoners after they have been incarcerated," and imposes a duty upon prison officials to "protect prisoners from the violence of other prisoners." Mabine v. Vaughn, 25 F.Supp.2d 587, 590 (E.D. Pa. 1998)(citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)).   However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.  Rather, an inmate asserting a failure to protect claim under § 1983 is required to plead facts that show "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Buoniconti v. City of Phila., No. 15-3787, 2015 WL 8007438, *14 (E.D. Pa. 2015).  A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Even a liberal reading of Mr. Talbert's *pro se* complaint does not reveal sufficient factual allegations to preserve Mr. Talbert's § 1983 claims against the City of Philadelphia, Giorla, Gainey and Farrell for the assault by a fellow inmate after his cell door malfunctioned.  Simply stated, Mr. Talbert has presented nothing more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements . . ." which is insufficient to survive a motion to dismiss. Iqbal, 556 U.S. at

678.  Mr. Talbert has not even alleged that there was an existing policy or custom that caused his injury.  Failure to assert the existence of a policy or custom is fatal to Mr. Talbert's municipal liability claim.  Without alleging a policy or custom, Mr. Talbert has failed to demonstrate any causal link between the City of Philadelphia's deliberate conduct and his injury.  Without a causal link, Mr. Talbert's municipal liability claim against the City of Philadelphia is legally insufficient.

Second, Mr. Talbert's complaint does not set forth any factual allegations demonstrating that these Giorla, Gainey or Farrell acted with deliberate indifference towards Mr. Talbert's health and safety.  See Mearin v. Swartz, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013)("The mere fact that a defendant is in a supervisory position is insufficient to establish liability under Section § 1983.").  Mr. Talbert states that "[t]he City, Giorla, Gainey, Farrell, Facilities and Carol were all aware of the electronical cell doors on Unit A1 pod 3 malfunctioning and opening prior to February 9, 2015" and that "[t]he City, Giorla, Gainey, Farrell, Facilities and Carol all knew of the severe risk of harm that the malfunctioning of such cell doors could bring upon detainees . . . "  Pl.'s Am. Compl. ¶¶ 32, 42.  Allegations that Giorla, Gainey and Farrell were aware of the malfunctioning doors have no factual support as there is absolutely no basis in the facts as stated to show they had actual knowledge that the doors were malfunctioning.  "An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an 'excessive risk to inmate health or safety.'"  Okey v. Strebig, No. 12-609, 2012 WL 5439042, *6 (M.D. Pa. Nov. 7, 2012)(citing Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)).  Rather, it

appears that Mr. Talbert's claim that Giorla, Gainey and Farrell had actual knowledge of the malfunctioning doors but chose to disregard that knowledge at the expense of Mr. Talbert's safety is based only on Mr. Talbert's own speculation and subjective belief.

### 3.    Mr. Talbert's Legal Mail

Mr. Talbert also attempts to plead a § 1983 claim about his mail.  Mr. Talbert states that "[b]etween February 19, 2015 and March 5, 2015, plaintiff had sent out legal and non-legal mail in which certain mail (several letters) sent out had never made it to its assigned destination."  Pl.'s Am. Compl. ¶ 46.  Additionally, Mr. Talbert alleges that the prison officials were destroying his legal mail envelopes thereby depriving him of relevant mailing addresses.  Furthermore, after making complaints about his mail, Mr. Talbert states that he was then retaliated against and disciplined.  Id. at ¶ 51.  Again, Mr. Talbert claims that Giorla, Gainey, Bryant, and May must held liable under § 1983 for depriving him of access to the courts.

Prisoners have a protected right of access to the courts.  Caldwell v. Beard, 305 F. App'x 1, 3 (3d Cir. 2008)(citing Lewis v. Casey, 518 U.S. 343 (1996)).  Accordingly, it is undisputed that "inmates have a right to send and receive legal mail. . . ."  Perotti v. United States, No. 12-1860, 2016 WL 1023367, *4 (M.D. Pa. Mar. 15, 2016).  In Lewis, the Supreme Court stated that an inmate plaintiff seeking to establish a viable claim for denial of access to the courts must "demonstrate that a non-frivolous legal claim had been frustrated or was being impeded."  Lewis, 518 U.S. at 351.  In other words, the inmate plaintiff can only establish a denial of access claim where he "shows he was actually

13

injured, that is, that he was actually hindered in his efforts to pursue a legal claim."
Jordan v. Cicchi, 617 F. App'x 153, 157 (3d Cir. 2015)(citing Lewis, 518 U.S. at 351).

Here, Mr. Talbert asserts that the defendants' past and current conduct resulted in the obstruction of his legal proceedings and the deprivation of his access to the courts. Despite vague allegations that several of his motions were lost and that he was denied several important mailing addresses, Mr. Talbert's complaint is devoid of an actual injury that he suffered as a result of the defendants' conduct. Mr. Talbert does not identify a nonfrivolous, arguable claim which was frustrated or impeded as a result of the defendants' conduct. Id. at 158 ("An actual injury is shown only where a nonfrivolous, arguable claim is lost."). Without allegations that he suffered an actual injury from the loss of his mail or the destruction of his legal envelopes, Mr. Talbert cannot state a plausible claim for relief under § 1983. Accordingly, I will grant the defendants' motion to dismiss on all claims based on these allegations.

### 4.    The Housing Claim

Finally, Mr. Talbert alleges the defendants violated his constitutional rights by placing mentally ill inmates on the disciplinary detention unit where he was housed. Although Mr. Talbert's complaint is unclear as to which constitutional right was violated by the defendants' conduct, I will liberally construe Mr. Talbert's complaint to allege a "conditions of confinement" claim under the Eighth Amendment. Mr. Talbert's complaint alleges that the mentally ill inmates housed on his unit would "bang and yell all night" and contaminate his cell with feces and urine. Pl.'s Am. Compl. ¶ 63. Because

of this conduct, Mr. Talbert suffers from headaches, lack of sleep and lack of concentration in addition to causing him "excessive mental distress." Id. at ¶¶ 63-64. According to Mr. Talbert, his physical and mental injuries arise from the City of Philadelphia, Giorla, Gainey, Farrell, Bryant, May, MHM and Jones' failure "to enforce or implement a policy, practice, or custom on confining mentally ill inmates with their own kind, and therefore, the absence of such policy/custom is the causation of such constitutional violation." Id. at ¶ 68.

The Eighth Amendment permits a prisoner to challenge the condition under which he is confined. Helling v. McKinney, 509 U.S. 25, 31 (1993)("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Although the Constitution does not guarantee "comfortable prisons," it does "ensure that inmates receive adequate food, clothing, shelter, and medical care. . . ." Farmer, 511 U.S. at 832. "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation . . .noise. . . and functioning of basic physical activities such as plumbing, ventilation and showers." Dockery v. Beard, 509 F. App'x 107, 112 (3d Cir. 2013). "Whether one characterizes the treatment received by [the prisoner] as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle." Helling, 509 U.S. at 32 (citing Estelle, 429 U.S. at 104).

Here, Mr. Talbert's municipal liability claim against the City of Philadelphia is based upon the City of Philadelphia's failure to implement a policy confining mentally ill inmates to separate housing units.  See Buoniconti, 2015 WL 8007438, at *8 ("Of course, the absence of a policy may provide the basis for a Monell claim if sufficiently pleaded.").

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.' Bryan County, 520 U.S. at 417.  The second occurs where 'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself.' Id. Finally a policy or custom may also exist where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonable be said to have been deliberately indifferent to the need.' Id. at 417-18.

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).  Essentially, Mr. Talbert argues that the City of Philadelphia's failure to implement a policy to sufficiently address the housing needs of mentally ill patients constitutes deliberate indifference to his serious medical needs.  While such a theory is permitted under Natale, Mr. Talbert has not provided sufficient factual allegations suggesting that the need for such policy is obvious or that any of the prison officials acted with deliberate indifference towards his health and safety.  Mr. Talbert does not elaborate on the frequency with

16

which these incidents occurred nor does Mr. Talbert allege that these incidents were reported to prison officials.  In order for Mr. Talbert's claim against the City of Philadelphia to proceed, Mr. Talbert will need to set forth his § 1983 municipal liability claim with greater particularity.  Accordingly, I will dismiss this cause of action against the City of Philadelphia.

I will also dismiss Mr. Talbert's cause of action against Giorla, Gainey, Farrell, Bryant, and May for failure to demonstrate that the defendants acted with deliberate indifference.  Mr. Talbert alleges that Giorla, Gainey, Farrell, Bryant and May "are all aware of this punishment that MHM and Ms. Jones have inflicted upon plaintiff, and even with the power to intervene and prevent, maliciously turned a blind-eye and allowed for this punishment to continue."  Pl.'s Am. Compl. ¶ 67.  Along with the statement that these same defendants have "failed to enforce or implement a policy, practice, or custom on confining mentally ill inmates with their own kind," Mr. Talbert sets forth no other factual allegations against Giorla, Gainey, Farrell, Bryant and May regarding their personal involvement in Mr. Talbert's alleged injury.  Id. at ¶ 68.  Despite claims that Giorla, Gainey, Farrell, Bryant and May knew of his alleged injuries, Mr. Talbert does not provide any factual support establishing their actual knowledge.  Mr. Talbert does not allege that he reported this conduct to any prison official nor does he allege that he sought medical help for his alleged injuries.  See Caldwell, 732 F.Supp.2d at 471 ("In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with a

sufficiently culpable state of mind.")(citations omitted).  Moreover, knowledge of Mr.

Talbert's injury cannot be imputed to Giorla, Gainey, Farrell, Bryant and May simply

because of their positions as supervisors.  Calhoun v. Wagner, No. 93-4122, 1997 WL

400043, *7 (E.D. Pa. July 14, 1997)(stating that the mere fact that the defendant was the

warden of the prison was insufficient to find him liable under § 1983).  Without further

factual enhancement, Mr. Talbert's allegations are simply "naked assertions" and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." Iqbal, 556 U.S. at 678.

Mr. Talbert also brings a § 1983 action against MHM and Jones on the basis of

these facts alleging that they are "obligated to send [mentally ill inmates] to the psych

ward unit at the Detention Center where other mentally ill inmates are housed."  Pl.'s

Am. Compl. ¶ 66.  Despite Mr. Talbert's claim that MHM and Jones are under an

"obligation" to send mentally ill inmates to a separate ward, Mr. Talbert does not set

forth any legal or factual basis for this obligation nor does he clarify its scope.  More

importantly, Mr. Talbert does not explain why a correctional health care provider should

be held liable under § 1983 for the conditions of his confinement.  Certainly, under §

1983, a correctional health care provider may be held liable for inadequate medical care

if the prisoner can show that the defendant "exhibited deliberate indifference to serious

medical needs." Tsakonas v. Cicchi, 308 F. App'x 628, 631-32 (3d Cir. 2009)(citations

omitted).  However, Mr. Talbert does not allege that MHM or Jones denied him treatment

for his "headaches, lack of sleep and lack of concentration."  Pl.'s Am. Compl. ¶ 64.

Instead, Mr. Talbert's Eighth Amendment claim challenges the housing decision to place mentally ill inmates on his block.  Mr. Talbert does not explain why MHM and Jones, as correctional health care providers, should be held liable for housing decisions in the prison.  Accordingly, I will dismiss Mr. Talbert's § 1983 claim against MHM and Jones on the basis of these facts.

### B.    Section 1985 and Section 1986 Claims

Mr. Talbert also brings claims against the defendants under 42 U.S.C. § 1985 and 42 U.S.C. § 1986, alleging that the defendants were engaged in a conspiracy to deprive him of his constitutional rights.  To make out a claim under § 1985, a plaintiff must establish:

> (1) A conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters & Joiners Local 610 v. Scott, 463 U.S. 825, 828-29 (1983). 42 U.S.C. § 1986 is a companion statute to § 1985 and provides in relevant part:

> Every person, who having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be omitted, shall be liable to the party injured.

42 U.S.C. § 1986.  "[I]f a plaintiff does not set forth a cause of action under § 1985, his claim under § 1986 necessarily fails as well, because 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985.'"  McCauley v. Computer Aid Inc., 447 F. Supp. 2d 469, 476 (E.D. Pa. 2006)(quoting Robison v. Canterbury Village, Inc., 848 F.2d 424, 431 n. 10 (3d Cir. 1988)).

Other than the statement that the defendants "conspired to deprive plaintiff equal access to a medical housing unit as others similarly situated. . ." Mr. Talbert's complaint is entirely devoid of any other allegations regarding a conspiracy.  Pl.'s Am. Compl. ¶ 28.  This brief conclusory statement that the defendants conspired to harm Mr. Talbert without any further factual enhancement is insufficient to state a plausible claim for relief.  See Craig Szemple, Plaintiff, v. Rutgers, the State Univ. of N.J., No. 10-5445, 2016 WL 1228842, *7 (D.N.J. Mar. 29, 2016)("In § 1983 cases, federal courts often reject vague and conclusory conspiracy claims, and require particular and specific allegations of conspiracy."); see also Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002)("[C]omplaints containing only conclusory, vague, or general allegations that defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.").  Accordingly, I will dismiss Mr. Talbert's § 1985 and § 1986 claim.

**IV.    CONCLUSION**

For the reasons discussed above, I am dismissing Mr. Talbert's amended complaint on both procedural and substantive grounds.  Rule 15 of the Federal Rules of Civil Procedure mandates that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Therefore, I will give Mr. Talbert leave to amend his complaint so that he may correct the procedural and substantive deficiencies in his amended complaint.

An appropriate Order follows.